# United States District Court
## for the
## Western District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*

One (1) black/silver colored Apple iPhone cellular phone, model A1634, FCC ID: BCGE2944A, IC# 579C-E2944A. The phone has a black front and grey back. The property was seized on October 11, 2019 and is currently in the possession of FBI at One FBI Plaza, Buffalo, New York 14202.

Case No. 19-M- 188

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

One (1) black/silver colored Apple iPhone cellular phone, model A1634, FCC ID: BCGE2944A, IC# 579C-E2944A, described further in Attachment A (with photograph), attached hereto and incorporated herein by reference.

located in the Western District of New York, there is now concealed *(identify the person or describe the property to be seized)*:
The items set forth in the Lists of Items to be searched and seized, Attachment B, attached hereto and incorporated by reference.

The basis for search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)

The application is based on these facts:

- ☒ continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

BRENDAN DUNFORD
Special Agent
Federal Bureau of Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 16, 2019

*Judge's signature*

HONORABLE H. KENNETH SCHROEDER, JR.
United States Magistrate Judge
*Printed name and Title*

City and state: Buffalo, New York

# ATTACHMENT A

### DESCRIPTION OF PROPERTY TO BE SEARCHED

One (1) black/silver colored Apple iPhone cellular phone, model A1634, FCC ID: BCGE2944A, IC# 579C-E2944A. The phone has a black front and grey back. The property was seized on October 11, 2019 and is currently in the possession of FBI at One FBI Plaza, Buffalo, New York 14202. Photographs of the property are included below.





## ATTACHMENT B

## List of Items to Be Searched For and Seized

Evidence and instrumentalities concerning violations of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B) as follows:

1. lists of co-conspirators, counterparties, and customers, and related identifying information;

2. telephone calls, including incoming, outgoing, and missed calls, phone contact addresses, email addresses and telephone numbers in directories, documents and files which reflect names, email addresses, addresses, telephone numbers and objects related to drug trafficking, and photographs regarding drug trafficking and drug trafficking associates contained in the cellular telephones;

3. SMS and MMS messages, electronic information, and any other wire and electronic communications relating to controlled substances and the distribution, movement, and location of narcotics proceeds, including virtual currency;

4. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

5. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

6. any information recording the particular device's travel or location, including geolocation information, mapping data, and location services;

7. Records regarding ownership of and/or possession of the Subject Devices;

8. Evidence of user attribution showing who used or owned the Subject Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

9. Records evidencing the use of the Internet relating to controlled substances and currency, including virtual currency, including:

    a. records of Internet Protocol addresses used;

    b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

    c.    records of any software for and usage regarding the storage and transfer of currency, including virtual currencies, i.e., bitcoins.

10.    As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

## **SEARCH WARRANT AFFIDAVIT**

STATE OF NEW YORK  )
COUNTY OF ERIE       )    SS:
CITY OF BUFFALO      )

### I. INTRODUCTION

**BRENDAN DUNFORD**, Special Agent of the Federal Bureau of Investigation, United States Department of Justice, having been duly sworn, states as follows:

1. I am a Special Agent of the Federal Bureau of Investigation (hereinafter "FBI"). As such, I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. I have been so employed as a Special Agent (hereinafter "SA") of the FBI since July 2009. During my employment with the FBI, I have participated in investigations concerning drug trafficking matters, weapons possession and crimes of violence. I am familiar with how controlled substances are obtained, diluted, packaged, distributed, sold, and used in the framework of drug trafficking and how drug traffickers utilize electronic communications to facilitate their illegal activities. I have participated in investigations which have employed the interception of wire, oral, and electronic communications authorized by the Federal Courts in the Western District of New York. My investigative

experience detailed herein, as well as the experience of other law enforcement agents who are participating in this investigation, serve as the basis for the opinions and conclusions set forth herein. I have not presented each and every fact of this investigation to date, and have only provided information necessary to establish probable cause for the petitioned Search Warrant.

3. This affidavit is made in support of a federal search warrant application for a cellular telephone recovered during the execution of a United States Postal Inspector's Service (USPIS) and Jamestown Police Department (JPD), controlled delivery of cocaine resulting in the arrest of JEFFREY JOHN GUZMAN-SUAREZ. The following facilities were seized by law enforcement, and this application seeks authorization to search the following facility:

**One (1) black/silver colored Apple iPhone cellular phone, model A1634, FCC ID: BCGE2944A, IC# 579C-E2944A (hereinafter "subject phone"), which is currently located in the Chautauqua County Jail custody.**

4. The information contained in this affidavit is based upon my participation and upon reports and information received from other law enforcement officers and agencies. This affidavit is provided for the limited purposes of establishing probable cause to support the attached search warrant application describing the investigation into Title 21, United States Code sections 841(a)(1) (hereinafter "the target offenses") and therefore does not contain each and every detail of the investigation.

## II. DETAILS OF THE INVESTIGATION

5. Members of the FBI Streets Task Force (SSTF), Jamestown Police Department (JPD, Ellicott Police Department (EPD), and Drug Enforcement Administration (DEA), have been targeting members and associates of a drug trafficking organization who are responsible for the distribution of powder cocaine and crack cocaine in and around Jamestown, NY. Members and/or associates of this organization are also suspected of violent acts, including the suspected murder of victim JOSEPH ANTHONY. Members of this organization include, GREG BARBER, ANTHONY SNOW, ANTHONY DARLING, BRETT SCHAEFER, BRANDI MCBRIDE, JOSE GUZMAN, HECTOR MONTANEZ, MATT RUDY, OMAR MARRERO, IRMA OCASIO, ASHLEY GREGORY, BEN OSMAN and others yet identified. To date investigators have conducted over 20 controlled evidence purchases which included consensually recorded meetings with members of this drug trafficking network. Law Enforcement has seized approximately 11 kilograms of cocaine from this organization being shipped via USPS from Puerto Rico. The Investigation to date has identified locations that this network utilizes to facilitate their networking among the subjects listed above in furtherance of drug trafficking activity. In addition, CHS's are well positioned to purchase higher quantities of drugs from these subjects.

6. On or about October 2, 2019, during a review of outgoing mail, Postal Inspectors were alerted to alerted to a Priority Mail parcel addressed addresses to "Jeffrey Guzman 504 Chandler St Apt. 2 14701" with the return address of "Felix Guzman 58 Calle Matienzo Cintron Luquillo P.R 00773." The U.S. Postal Inspectors deemed the parcel

3

suspicious, as it shared characteristics with packages found to contain narcotics as well as its origination in Puerto Rico, which is a known source location for narcotics.

7.  On or about October 8, 2019, and upon further inspection, a check of a law enforcement database revealed that the sender and recipient information appear to be fictitious. Specifically, the listed sender (Felix Guzman) could not be associated with the provided return address, 58 Calle Matienzo Cintron Luquillo P.R 00773. The listed recipient (Jeffrey Guzman) could not be associated with the listed delivery address of 504 Chandler St Apt. 2 14701 (Jamestown, NY). USPS customer service had received inquiries regarding the delivery of the parcel.

8.  On October 8, 2019, a Niagara Frontier Transit Detection K9 conducted a drug sniff of the parcel, as requested by U.S. Postal Inspectors, and subsequently alerted to a trained odor emanating from the parcel. On October 8, 2019, an individual contacted the Postal Service and requested to know the status of the subject parcel. He identified himself as Jeffrey GUZMAN and left a call-back phone number of (716) 485-3804.

9.  On October 9, 2019, USPI Brendan Jaffe applied for and was granted a Federal warrant in the Western District of New York by the Honorable H. Kenneth Schroeder, United States Magistrate Judge, authorizing the search of the Priority mail parcel. On October 10, 2019, USPI Jaffe executed the search of the parcel and discovered, concealed inside the parcel, was a small portable charcoal grill. Inside the grill was an off-white chunky substance in brick from that was wrapped in multiple layers of plastic wrap, food storage bags and cleaning

4

wipes. The off-white chunky substance was field tested, and it tested positive for cocaine and weighed approximately 1043 grams of cocaine. On October 11, 2019, an undercover call was placed to Jeffrey GUZMAN at (716) 485 3804 from the Jamestown Post Office. The phone call was disconnected, however, he called back to the Jamestown Post Office and identified himself as Jeffrey GUZMAN. He was advised that the parcel he was looking for had arrived and he would need to come into the Jamestown Post Office to pick it up.

10. On October 11, 2019, at approximately 12:01pm, an individual matching GUZMAN's description entered the Jamestown Post Office. He presented a New York State Driver's License bearing the name Jeffrey John Guzman Suarez and requested the subject parcel. At approximately 12:05pm GUZMAN accepted the parcel and attempted to exit the Jamestown Post Office. He was stopped by law enforcement officers and was escorted into an office. GUZMAN declined to provide any information or details regarding the subject parcel and his involvement. GUZMAN was subsequently taken into custody.

11. On October 11, 2019, at approximately 12:22 p.m., Jeffrey John Guzman-Suarez DOB: 11/7/90, was brought into the Jamestown City Jail and his property was inventoried. Guzman's cell phone was amongst that property in which it was to be seized at the time of intake. It is believed there is evidence within the cell phone which I am requesting to seize from the Chautauqua County Jail that belongs to Jeffrey John Guzman-Suarez and is in Guzman's property in the Chautauqua County Jail.

### III. CELLULAR TELEPHONES AND OTHER COMMUNICATION AND ELECTRONIC DEVICES

12. The investigation has revealed, through subpoena responses, law enforcement databases, consent searches, previously executed search warrants, and witness interviews that members of violent street gangs, as well as drug traffickers, keep in regular contact via cellular telephone and through social media websites such as Facebook and Snapchat, which are accessed through cellular phones. Through these methods, law enforcement has been able to identify and make connections between a large number of gang members, drug traffickers, and their associates. Accordingly, based upon my training and experience and my knowledge of the investigation, I believe that JEFFREY JOHN GUZMAN SUAREZ has used his cellular telephone and other communication devices as a means to communicate with members and associates of violent gangs and drug traffickers, and customers regarding illegal distribution of controlled substances, possession of firearms, and other illegal activity.

13. This investigation has shown that members and associates of violent gangs and drug traffickers utilize telephones to communicate with each other. Based on my investigative experience, members of violent gangs as well as drug traffickers, use their cellular phones in and around times associated with the commission of crimes, to include violent acts. As it relates to this case in particular, and based on my training and experience, cellular telephones and other communication and electronic devices will contain, within their memory, contact lists, call logs, text messages, photos, videos, audio recordings, internet browser history, historical GPS locations and other information that would be pertinent to this ongoing investigation.

## IV. AUTHORIZATION TO SEARCH AND SEIZE

14. Accordingly, this application seeks authorization to search for and seize, from **the subject phone**, evidence of violations of the target offences.

15. Based on my training, my experience, my participation in this investigation, and my discussions with other experienced law enforcement personnel, I have learned:

   a. Gang members and narcotics traffickers frequently maintain records, notes, ledgers, and other digital records relating to the transportation, ordering, sale and distributions of controlled substances, including cocaine, cocaine base, heroin and marijuana. Furthermore, I know that the aforementioned records, notes, ledgers, etc., are generally maintained where the traffickers have ready access to them;

   b. That gang members and narcotics traffickers commonly maintain records of telephone calls, addresses or telephone numbers in cellular telephones which reflect names, addresses and telephone numbers of their associates in their narcotics trafficking organization, as well as photographs of themselves and their drug trafficking associates;

   c. That gang members and narcotics traffickers commonly retain photographs and videos of themselves and other coconspirators, in possession of firearms, narcotics and large sums of money, stored within the memory system of their devices;

## V. SUMMARY OF RELEVANT TECHNOLOGY

16. A cellphone or mobile telephone is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers called "cells", enabling communication with other cellular

7

telephones or traditional "land line" telephones. A cellular telephone usually includes a "call log", which records the telephone number, date, and time of calls made to and from the phone.

17. In addition to enabling voice communications, cellular telephones offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device.

### VI. SEEKING AUTHORIZATION TO SEARCH AND SEIZED

18. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

19. There is probable cause to believe that things that were once stored on the **subject phone** may still be stored there, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been

downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

      b.     Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

      c.     Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

      d.     Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

20.     As further described in Exhibit A, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes

described on the warrant, but also forensic evidence that establishes how the **subject phone** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **subject phone** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of external storage media, and the times the device was in use. File systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a

10

computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

### VII. ANALYSIS OF ELECTRONIC DATA

21. The search warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure.

22. Searching the cellular telephone for the evidence described above may require a range of data analysis techniques. In some cases, it is possible for Agents to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. For example, Agents may be able to execute a "keyword" search that searches through the files stored in a cellular telephone for special words that are likely to appear only in the materials covered in the warrant by looking for particular directory or file names. In other cases, however, such techniques may not yield the evidence described in the warrant. Suspected criminals have the ability to mislabel or hide information and directories; encode communications to avoid using keywords, attempt to delete files to evade detection; or take other steps designed to frustrate law enforcement searches for information. These steps may require Agents to conduct more extensive searches, such as scanning areas of the device's memory not allocated to listed files, or opening every file and scanning its contents briefly to

determine whether it falls within the scope of the warrant. In light of these difficulties, your Affiant requests permission to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described above.

23. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

24. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **subject phone** to seek the items described in Exhibit A.

**WHEREFORE**, based upon the foregoing, I believe that probable cause exists that evidence related to violations of the enumerated offenses will be found in the identified facility to be searched, and I therefore request that the Court issue the proposed search warrant.

BRENDAN DUNFORD
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
this 16th day of October, 2019.

HONORABLE H. KENNETH SCHROEDER, JR.
United States Magistrate Judge

12